IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TONIC WEAR, INC.,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>RLI INSURANCE CO., ET AL,<br><br>　　　　Defendants.<br>_____ / | No. C-05-3484 EDL<br><br>**ORDER GRANTING DEFENDANT WEEKLY'S MOTION TO DISMISS** |

## I. INTRODUCTION

Defendant Brad Weekly moves to dismiss for lack of personal jurisdiction. After carefully considering the arguments of the parties and weighing the evidence in the light most favorable to Plaintiff Tonic Wear, Inc., the Court GRANTS Weekly's motion.

## II. FACTUAL BACKGROUND

Tonic Wear, Inc. is a California corporation authorized to do business in Oregon; Acme Made is a fictitious business name registered in both California and Oregon, and is owned by Tonic Wear. See Loncar Decl. Exs. B-E. Tonic Wear has two principal shareholders: Kirk Thornby in Portland, Oregon, and Mark Loncar in San Francisco. Id. at ¶¶ 2-4. Brad Weekly is an Oregon resident who is licensed as an insurance agent in Oregon and Washington, but who has never resided in California nor been licensed to sell insurance there. See Weekly Decl. ¶¶ 2-3. Weekly has never maintained an office, had employees, had telephone numbers or addresses, or possessed bank accounts or real property in California. Id. at ¶¶ 6-9. Furthermore, he has never directed any advertising specifically toward California, and has no customers in California. Id. at ¶¶ 10-11.

In the Fall of 2003, Thornby contacted Weekly to purchase a business insurance policy. See

Rutchik Decl. Ex. C at T-14, Ex. D at 18:14-23. Plaintiff alleges that at that time, Thornby told Weekly that Plaintiff was a California corporation doing business as Acme Made, which operated out of locations both in Oregon and California. Am. Compl. ¶¶ 16-17, 21-22. The evidence on this topic differs, however, as addressed below. After Weekly obtained information from Thornby, Weekly contacted Superior Access Services, a surplus lines insurance dealer, to obtain an insurance quote for Thornby. Weekly Decl. ¶ 15. Superior Access is located in California and operates a website that allows agents to obtain instant insurance quotes. Id.; see also Superior Access Decl. Ex. S at 3 (operates website out of California). Through Superior Access, Weekly obtained a quote from RLI Insurance Company in Illinois. Weekly Decl. ¶ 15. When filling out the "in home business policy application" for RLI, Weekly indicated that the insured was Kirk Thornby, the business name was Acme Made, and the business address was in Portland. Superior Access Decl. Ex. K.

Weekly requested that Thornby send him "a check payable to Superior Access Insurance Services." Rutchik Decl. Ex. C at T-14. In response, a check bearing the address "Acme Made, 499 Marina Blvd #104, San Francisco, CA" was sent to Weekly made out to "Superior Access Insurance Services . . . Irvine, CA." Id. at T-16. RLI issued a business-owners policy to Kirk Thornby d/b/a Acme Made covering conduct in all fifty states. See Am. Compl. Ex. A at 1 (business described as an organization with premises in Portland, OR).

In June 2005, Acme Studios, Inc., sued Acme Made and Tonic Wear in the Central District of California, alleging trademark infringement, dilution, and unfair competition. Tonic Wear tendered the claim to RLI, which declined coverage. Tonic Wear filed this lawsuit against RLI in August 2005 seeking a declaratory judgment on RLI's duty to defend and asserting bad faith denial of coverage and breach of contract claims. Tonic Wear subsequently filed an amended complaint asserting claims of professional negligence and promissory estoppel against Weekly. Weekly moved to dismiss Tonic Wear's claims against him, asserting both that this Court lacks personal jurisdiction over Weekly, and that Kirk Thornby and Acme Made, Inc., who were named as parties in the original complaint, but not in the amended complaint, are indispensable parties. This Court agrees that Weekly should be dismissed from this lawsuit.

## III. DISCUSSION

### A. Personal Jurisdiction.

Personal jurisdiction is determined by the applicable state statute and constitutional principles of due process. Data Disc, Inc. v. Systems Tech. Assocs., Inc., 557 F.2d 1280, 1286 (9th Cir. 1977). California allows courts to exercise personal jurisdiction to the full extent permitted in the Constitution. See Cal. Code Civ. Proc. § 410.10. Due process requires that a nonresident defendant have sufficient minimum contacts with California to comport with traditional notions of fair play and substantial justice. See, e.g., International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945). If the nonresident's activities are "extensive or wideranging" or "substantial . . . continuous and systematic," a court may exercise general jurisdiction with respect to any cause of action asserted against a nonresident. Farris v. Capt. J.B. Fronapfel Co., 182 Cal. App. 3d 982, 987 (1986) (citations omitted); see also Amoco Egypt Oil Co. v. Leonis Nav. Co., 1 F.3d 848, 851 n.3 (9th Cir. 1993) (noting that courts have "regularly declined to find general jurisdiction even where the contacts were quite extensive").

Alternatively, courts may exercise specific personal jurisdiction when the claim arises out of the nonresident's activities within or affecting the forum state, based on a three-part test:

> (1) The nonresident defendant must do some act or consummate some transaction with the forum or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) The claim must be one which arises out of or results from the defendant's forum-related activities; (3) Exercise of jurisdiction must be reasonable.

Data Disc, 557 F.2d at 1287. The plaintiff bears the burden of establishing that jurisdiction is proper. Id. at 1285. Where "the jurisdictional facts are enmeshed with the merits, . . . [the Plaintiff need only] establish a prima facie showing of jurisdictional facts with affidavits and perhaps discovery materials." Id. In determining whether the plaintiff has presented a prima facie case, the Court must assume the truth of well-pled allegations in the complaint that are not contradicted and resolve conflicts between affidavits in plaintiff's favor. Rio Props., Inc. v. Rio Int'l Interlink, 284 F.3d 1007, 1019 (9th Cir. 2002). Once the defendant has contradicted allegations contained in the complaint, plaintiff may not rest on the pleadings, but must present admissible evidence which, if

3

1 believed, would support the court's exercise of personal jurisdiction. Data Disc, 557 F.2d at 1284

2 (citation omitted).

### B. Tonic Wear Has Not Established A Prima Facie Case For Personal Jurisdiction.

To establish that general jurisdiction exists over Weekly, Plaintiff must show that Weekly had "extensive or wideranging" or "substantial . . . continuous and systematic" contacts with California. See Farris, 182 Cal. App. 3d at 987 (citations omitted). The Court concludes that the contacts in this case fall far short of the quantity and quality of contacts necessary to create general jurisdiction over Weekly, a non-resident who has never maintained a presence in California, is not licensed to sell in California, and has not advertised his services here.

Plaintiff also has failed to establish a prima facie case that Weekly performed some act by which he purposefully availed himself of the privilege of conducting business in California. See Data Disc, 557 F.2d at 1287. Plaintiff has not established that Weekly engaged in "significant activities" within California or has created "continuing obligations" between himself and the forum. See Gray & Co. v. Firestenberg Mach. Co., 913 F.2d 758, 760 (9th Cir. 1990). To support personal jurisdiction, a defendant's availment must be purposeful; defendant's contacts with the forum may not have occurred solely due to the actions of the plaintiff or of a third party. See Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 n.17 (1985). Although a single act can support jurisdiction, it must create a "substantial connection" to the forum. Id. at 475 n.18.

Plaintiff relies on the claim that Thornby told Weekly that Acme Made was the fictional mark of a California corporation that operated primarily in California. Am. Compl. ¶¶ 16-17, 21-22. Weekly, however, contradicted these allegations in his declaration:

> Mr. Thornby told me that he was doing business under the name 'Acme Made, Inc.' He did not tell me anything about any company named 'Tonic Wear, Inc.' and specifically did not tell me that he was doing business under that name. . . . Mr. Thornby did not tell me that his business had any offices or facilities in the State of California or in any sense operated in California. The only contact between California and his business about which Mr. Thornby told me was that there was an investor in his business who resided in San Francisco. However, I understood from Mr. Thornby that he made the operational decisions and that the business operated out of his home in Oregon.

Weekly Decl. ¶¶ 13-14. Thornby did not provide a contrary declaration, and his deposition testimony on these points, even if believed, was so equivocal that it does not suffice to counter

United States District Court
For the Northern District of California

4

1  Weekly's testimony and support jurisdiction over him.  First, Thornby could not definitively state
2  that he ever even told Weekly about Tonic Wear in the relevant time period: "You do have some
3  doubt in your mind, however, as to whether or not in the fall of 2003 you communicated the name
4  Tonic Wear, Inc., to Mr. Weekly?"  "Yes."  Rutchik Decl. Ex. D at 18:4-7; see also id. at 13:20-25
5  (admitting that he was thinking about Acme Made rather than Tonic Wear when he first approached
6  Weekly to obtain insurance).  Second, although Thornby testified that he told Weekly that his
7  partner operated out of San Francisco, he could not remember actually ever providing the San
8  Francisco address to Weekly, and his testimony does not establish that he told Weekly that the
9  business operated out of San Francisco.  Rutchik Decl. Ex. D at 51:12-53:1 ("I remember describing
10 my business and describing my relationship with my partner and the fact that we were launching a
11 business and that we needed insurance."  "Okay. . . . [But] you have no recollection of speaking the
12 words '499 Marina Boulevard' to Mr. Weekly during that period of time when you were first getting
13 the insurance, right?"  "I might have, I remember discussing my partner. . . I do not remember him
14 asking for the San Francisco address"); see also id. at 83:19-84:22 ("When you had the conversation
15 with [Weekly] about the appropriateness of the in-home policy, did you specifically ask [Weekly]
16 whether or not it was appropriate because of Mr. Loncar's address in San Francisco, or words to that
17 effect?"  "I do not recall"); but see id. at 86:3-23 ("I remember asking specifically whether [Loncar]
18 was covered").

19         Plaintiff also argues that Weekly saw that Acme Made's premium payment check was
20 written from a California address.  Weekly states, however, that he interpreted the check to mean
21 only that Plaintiff's company had a California as well as an Oregon mailing address, but not that
22 Plaintiff actually conducted business in California.  See Weekly Dep. 102:11-12; Weekly Decl. ¶ 14
23 ("Mr. Thornby did not tell me that his business had any offices or facilities in the State of California
24 or in any sense operated in California. . . .  I understood from Mr. Thornby that he made the
25 operational decisions and that the business operated out of his home in Oregon").  Similarly,
26 although Plaintiff notes that Weekly admitted looking at the Acme Made website (Rutchik Decl. ¶ 5,
27 Ex. C at 26:7-10), which since its inception has shown that Acme Made operates in Portland and San
28 Francisco (Loncar Decl. Ex. A), there is no evidence that Weekly noticed the San Francisco address.

5

1  Weekly may have been negligent in not noticing and not inquiring further, but these facts do not
2  show purposeful availment.

3        Finally, Plaintiff contends that Weekly's relationship with Superior Access establishes
4  purposeful availment.  Although Weekly obtained the policy for Plaintiff through a website of a
5  California corporation, Superior Access, he did so as a matter of convenience, because Superior had
6  access to insurance throughout the United States.  Actually, Weekly used Superior to obtain
7  coverage for Thornby from an Illinois insurer.  The fact that Weekly used a broker who happened to
8  be located in California rather than some other state, and whom he contacted through the internet
9  without leaving Oregon, is the kind of attenuated contact that does not suffice to show purposeful
10 availment.  Weekly needed to use Superior Access simply because it was an insurance dealer, not
11 because it is located in California or could sell California policies to California residents.  Weekly
12 Decl. ¶ 15.  That Weekly's contract with Superior had a venue provision in Orange County adds
13 little, because the dispute here is over Plaintiff's dealings with Weekly, not over Weekly's dealings
14 with third party Superior Access.  Courts have declined to find that a contractual relationship alone
15 gives rise to specific jurisdiction, but instead have looked at factors such as prior negotiations,
16 contemplated future consequences, actual course of dealing, and the terms of the contract between
17 the parties.  See Burger King, 471 U.S. at 478-82.  Here, the scope of the contractual relationship
18 between Weekly and Superior Access falls far short of the extensive degree of interaction between
19 the parties in Burger King.  Moreover, unlike Burger King, the contract between Weekly and
20 Superior Access is not between the opposite parties, but between Defendant and *a third party*.

21       Crucially, no evidence in this case suggests that Weekly *intentionally* aimed his activity at
22 California, knowing that the impact would be felt in California.  Cf. Calder v. Jones 465 U.S. 783,
23 786-89 (1984); Core-Vent Corp. v. Nobel Indus., 11 F.3d 1482, 1486 (9th Cir. 1993) ("Most
24 significant, the court concluded defendants knew that the brunt of the harm would be suffered in
25 California" because the defendants knew that the plaintiff lived and worked in California, and knew
26 that the newspaper in which the allegedly libelous statements were printed had a large circulation in
27 California).  To the contrary, the gravamen of the complaint and evidence here concern Weekly's
28 allegedly *negligent failure to consider* the California aspect of Plaintiff's business at all when he

6

procured the policy for Thornby. Cf. Harris Rutsky & Co. v. Bell & Clements, 328 F.3d 1122, 1132 (9th Cir. 2003) (asserting personal jurisdiction in a case where the defendant was alleged to have committed an intentional tort, knowing that the plaintiff was a California resident whose principal place of business was in California and thus that the bulk of the harm would be felt there, and where the defendant, in addition to maintaining ongoing contacts with California over a five-year period, drafted an agreement that called for performance and was signed in California).

## IV. CONCLUSION

The Court concludes that, on balance, Plaintiff has not made a prima facie case that Weekly purposefully availed himself of the privilege of doing business in California. In light of this determination, the Court need not reach the second and third prongs of the test for specific jurisdiction, or Weekly's additional argument regarding failure to join indispensable parties. For these reasons, the Court GRANTS Weekly's Motion to Dismiss.

**IT IS SO ORDERED.**

Dated: July 20, 2006

ELIZABETH D. LAPORTE
United States Magistrate Judge